OVERTON, J.
 

 On July 6, 1922, Leopold Klein, the plaintiff herein, entered into a written contract with the contracting and building firm of J. D. & J. M. Collins to erect a duplex apartment house on General Pershing street, in the city of New Orleans, for the sum of $10,310, payable in five installments of $2,062 each; the last installment being payable 45 days after the completion and recordation of the acceptance of the work, and the production of a certificate from the recorder of mortgages showing that no liens for labor performed or material furnished were of record against the building. The contractors, pursuant to the provisions of Act No. 221 of 1914, as amended by Act No. 262 of 1916, furnished a bond in favor of the owner, all subcontractors, workmen, laborers, mechanics, and furnishers of material, as their interests might appear, for the faithful performance of the contract, and for the payment of all subcontractors, workmen, mechanics, furnishers of material, etc., “up to the sum of $5,155,” with the Boyal Indemnity Company as surety thereon.
 

 The contractors undertook to erect the building. About the time that they were entitled, under the terms of the contract, to the second payment, considerable complaint was made by some of the furnishers of material to the effect that they were not being paid. The architect examined into the matter and found, not only that some of the materialmen had not been paid the full amount that was due them, but that the contractors were in arrears with some of the laborers. The architect spoke to the contractors relative to the complaints against them, and they
 
 *707
 
 advised him that they did not have the funds with which to make the payments, and sought his advice as to what to da under the circumstances. He advised them that the logical thing to do would be to see the surety on their bond. A conference was held on August 31, 1922, in the office of the surety on the bond, at whiclkplaintiff’s attorney, J. H. Wiener,. the architect, Albert Bear, the contractors, J. D. & J. M. Collins, and S'. T. Mikell, the representative and attorney in fact of the surety company, were present.
 

 It is contended by plaintiffs, and by those having claims against the building, that at this conference it was agreed that the surety company would undertake the completion of the building, and that all future payments would be made to it, .and that the company would disburse the money to be thus paid. On the other hand, the surety company contends that the only obligation which it assumed at the conference mentioned was the obligation of receiving and disbursing the money to be paid by the owner for the erection of the building.
 

 Pretermitting for the moment what was actually agreed to at this conference, it may be said that the building was finally completed, though some time after the elate fixed in the contract for its completion.
 

 At the time of the completion of the building, plaintiff had made all of the payments, stipulated in the contract, except the last payment, and had also paid for all extra work done. At the time of the completion of the building, o,r shortly thereafter, there were also of record against the building a number of claims.
 

 In view of these claims, plaintiff deposited in court the last payment dile by him, less $930, which he claimed he was entitled tó as penalty, under the terms of the contract for delay in the delivery of the building to him, and instituted the present proceedings, provoking a concursus, to which he made the surety company and the contractors parties, and in ¿phich he prayed that those who had filed cláimsj against the premises fie cited to appear ^cf assert their rights against the fund depfosited by him and against the contractors ,and surety company, and prayed, among other things, that the liens, resulting from the Recordation of the claims against the premises be canceled, and that he be decreed relieved of all liability to any person whatsofever on account of stiid contract. Later, under orders of court,\plaintiff deposited in court the $930 withheld by him on the last payment, thus making,the sum of $2,062 deposited by him altogether.
 

 The surety company appeared and filed an answer to the proceeding. The matter was referred to a special commissioner appointed by the court. Those who had filed claims against the building appeared before the commissioner and made proof - of their claims. At the hearing had, the commissioner found that these claims were due. He also found that the total of the claims proved, including the damages claimed by, pjaintiff for delay in delivering the building, but exclusive of the amount due him for .acting as commissioner and such amount as might be found due to the attorney for plaintiff as fees, exceeded by several thousand dollars the total of the funds on hand with which to pay these claims and the amount of the bond signed by the surety company. The commissioner also found, among other things, as we appreciate his findings, that, at the conference held on August 31, 1922, after the contractors had admitted that they were without sufficient funds to complete the building, the surety agreed to undertake and did undertake, to complete it and to receive and disburse all further payments to be made thereon.' In view of these and other findings, the commissioner, in a judgment prepared by him, recommended to the lower court that there be judgment in favor of the claimants, who had proved their claims, for the amounts thereof, naming the claimants
 
 *709
 
 and stating the amounts, and against the contractors, the surety company, and plaintiff, in solido, and that there he judgment in favor of plaintiff and against the surety company for the amounts found due and owing the various claimants, for which amounts judgment was recommended against plaintiffs in favor of said claimants, this recommendation evidently having been made for' the purpose of protecting plaintiff as against the surety company. The commissioner also recommended that judgment be rendered in favor of the attorneys for the plaintiff for the sum of $250, as attorneys’ fees, and against the contractors and surety company in solido, and that there be judgment against these defendants in solido in favor of plaintiff for $930 damages for the delay in delivering the building. The report of the commissioner contains other recommendations unnecessary to mention.
 

 The findings and recommendations of the commissioner were excepted to by the surety company and by the attorneys for plaintiff; the latter complaining of the amount recommended as their fee. These exceptions were overruled by the lower court, and judgment was rendered in accordance with the recommendations of the commissioner.
 

 The surety company and plaintiff have appealed from the judgment rendered; the appeal of plaintiff bearing the number 27245, appearing in the title, and that of the surety company the number of 26860, appearing therein. The attorneys for plaintiff have filed an answer to the appeal, praying that the fees allowed them be increased from $250 to $1000. No one else complains of the judgment rendered.
 

 The only complaint that plaintiff seems to make against the judgment rendered is as to the fee allowed his attorneys, which he deems insufficient. The surety company complains of the judgment chiefly because it condemns it for an amount exceeding the penalty of the bond; the company taking the position that under no circumstances can it be held liable for an amount exceeding $5,155, the amount for which it signed.
 

 Considering, first, the contentions of the surety company it may be said that, had that company, for instance, left it to the owner to complete the work upon the default of the contractors, unquestionably the company could not be held liable for more than the amount for which it had bound itself as surety, except for such additional amounts, imposed by law, such as costs of court and statutory penalties. Fidelity Homestead Ass’n v. Kennedy & Anderson, 158 La. 1059, 105 So. 64. However, if the company, upon the default of the contractors, undertook to complete the work, "a different case is then presented. In that event, the company, by such new undertaking, put itself in the place of the contractors from the moment of the new undertaking, and became liable for the costs of completing the building, without reference to the amount for which it had signed as surety. In other words, in that event, from that moment on, the company occupied the position of contractor and became liable for the costs of completion accordingly, and also for damages, as fixed in the contract, which it then undertook to execute, for the delay in completing and delivering the building.
 

 Our examination of the record leads us to the conclusion that the surety company, when the contractors conceded they were without funds with which to complete the building, did agree to undertake to complete it, and did complete it through J. D. Collins, one of the members of the firm that had entered into the contract to erect it, Collins receiving as compensation therefor $44 a week. We think that this conclusion is supported by the evidence of J. H. Wiener, of counsel for plaintiff, who testifies in- detail as to what the agreement reached on August 31, 1922, was, and whose evidence is clearly'-to the effect that it was agreed that the surety
 
 *711
 
 company would take over the completion of the contract, and that all future payments would be made to it. This conclusion, we think, is supported also by the evidence of plaintiff and by that of the architect. It is true that the evidence of ’J. M. Collins, one of the members of the firm that entered into the contract to erect the building, and a brother of J. D.- Collins, through whom we find that the contract was. completed, is to the effect that the agreement, entered into, after the default of the contractors, by the surety company, did not contemplate that the company would take over the contract and complete it, but that it would only receive and disburse the remaining payments to be made on the building, still, at the same time, this witness frankly admits, before making this statement, that he never thoroughly understood the nature of the agreement entered into by the surety company, after the default of the contracto'rs—a fact which we think strongly militates against the weight to be attached to his evidence on the point here involved. It is also true that the evidence of Mikell, the agent of the surety company, is to the effect that his company did not undertake to complete the building, but only to receive and disburse the payments thereon after the second one was made, still there are parts of his evidence that point to an intention to take the contract over and complete it, such as the giving, in some instances, of orders direct for material with which to complete the building. In our view, the evidence, as a whole, supports the conclusion announced by us; that is, that the surety company did take the contract over, after the default of the contractors, for the purpose of completing the building.
 

 As ■ the surety company took the contract over for the purpose of completing the building, it follows, as we have held, that the company is liable for the cost of completing the structure and for damages for the delay in delivering it, without regard to the amount for which it signed as surety, on the theory that, as to such completion and delivery, the company stood in the place of the contractors. As relates to any indebtedness, involved in this litigation, contracted prior to the taking over of the contract ’ by the surety company, which we may say is far less than the amount of the bond, the company is liable for it as surety on the bond. We therefore think that the judgment of the lower court, holding the surety company liable for all of the foregoing indebtedness, is correct.
 

 The surety company also complains of the allowance of attorneys’ fees against it. The bond, however, provides that “any attorney’s fees connected with the enforcement of this contract shall be a charge against the builders and their surety,” and, as the surety signed the bond with this stipulation in it, and moreover undertook to complete the contract with this stipulation in it, we find no merit in the complaint. As relates to the complaint of plaintiff and his attorneys as to the amount of attorneys’ fees allowed the latter, we see no sufficient reason to disturb the judgment in that respect.
 

 For the reasons assigned, the judgment appealed from is affirmed, plaintiff and the surety company, both of whom are appellants, to pay the costs of appeal in equal proportions.